UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MERYL LUSSAN                                    CIVIL ACTION

VERSUS                                          NO. 17-3086

MERCK SHARP & DOHME CORP.,                      SECTION "R" (4)
ET AL.

# ORDER AND REASONS

Defendants Organon USA, Inc., Merck Sharp & Dohme Corp., and Merck & Co., Inc., (collectively "Merck") move the Court to dismiss Meryl Lussan's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Lussan does not oppose the motion. Because Lussan fails to plead a plausible claim under the Louisiana Products Liability Act, the Court dismisses her complaint.

## I. BACKGROUND

This is a Louisiana law products liability case. According to plaintiff's complaint, defendants design, manufacture, market, and sell Implanon and Nexplanon, both of which are birth control implants designed to prevent

---

[1] R. Doc. 7.

pregnancy.[2] Plaintiff alleges that in approximately March of 2011, she had an Implanon implant inserted.[3] Between June and August of 2011, plaintiff allegedly suffered urinary tract infections, lower right abdominal pain, burning, and painful bowel movements.[4] In March of 2012, plaintiff had her Implanon implant replaced with a Nexplanon implant.[5] Plaintiff alleges that over the next two years, she experienced multiple urinary tract infections, bowel issues, lower back pain, significant weight loss, nausea, vomiting, headaches, and other symptoms.[6] Despite these issues, when her implant expired in January, 2015, plaintiff had it replaced with a new Nexplanon implant.[7]

On January 4, 2017, plaintiff sued Merck in state court,[8] alleging that Implanon and Nexplanon were defective and unreasonably dangerous, and that plaintiff's use of Implanon and Nexplanon caused her injuries.[9] Plaintiff also alleged that defendants made false, misleading, and inaccurate representations, that the implants were "inherently dangerous in a manner

---

[2] R. Doc. 1-2 at 3-4 ¶¶ 2, 3, 7.
[3] *Id.* at 3 ¶ 2.
[4] *Id.* ¶¶ 2, 3.
[5] *Id.* ¶ 3.
[6] *Id.* ¶ 4.
[7] *Id.*
[8] *Id.* at 2.
[9] *Id.* at 3 ¶ 6.

that exceeded any purported, inaccurate and/or insufficient warnings," and that the implants were unreasonably dangerous in their construction and/or composition.[10]

On April 10, 2017, Merck removed the case to this Court on the basis of diversity jurisdiction.[11] Defendants now move to dismiss, arguing that plaintiff fails to state a claim for which relief can be granted. Plaintiff has not responded to defendants' motion.

## II. DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495

---

[10] *Id.* at 4 ¶¶ 8, 9.
[11] R. Doc. 1.

3

F.3d 191, 205 (5th Cir. 2007)). But a court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555). In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *see Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed.

### III. DISCUSSION

In Louisiana, the Louisiana Products Liability Act provides the exclusive theories of liability of a manufacturer for damages caused by its product. La. Stat. Ann. § 9:2800.52. A plaintiff may not recover from a

manufacturer in tort under any theory of liability that is not set forth in the LPLA. *Id.*; *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261-62 (5th Cir. 2002). The statute provides that a manufacturer "shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. Stat. Ann. § 9:2800.54(A).

A product is unreasonably dangerous for the purposes of the statute "if and only if" it is unreasonably dangerous: (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty. *Id.* at § 9:2800.54(B)(1–4). Thus, the LPLA limits the plaintiff to four theories of recovery: construction/composition defect, design defect, inadequate warning, and breach of express warranty.

"While the statutory ways of establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence, or warranty, respectively, neither negligence, strict liability, nor breach of express warranty is any longer viable as an independent theory of recovery against a manufacturer." *Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 245 (E.D. La. 1996) *aff'd*, 106 F.3d 1245 (5th Cir. 1997) (citing

5

*Automatique New Orleans, Inc. v. U-Select-It, Inc.*, 1995 WL 491151 at *3 n.2 (E.D. La. Aug. 15, 1995) (no independent negligence claim); J. Kennedy, A Primer on the Louisiana Products Liability Act, 49 La. L. Rev. 565, 589-90 (1989)).

Plaintiff's complaint is heavy on legal conclusions but light on factual allegations. The complaint generally alleges that the implants were unreasonably dangerous in their construction and/or composition, and plaintiff alleges false representations and "insufficient warnings."[12] Viewing plaintiff's allegations in the light most favorable to plaintiff, the Court interprets her complaint as attempting to assert that the implants were unreasonably dangerous because of their construction/composition, because of inadequate warnings, and because of nonconformity with an express warranty, all theories of liability under the LPLA. The Court next considers whether plaintiff's allegations satisfy the LPLA.

### A. Construction or Composition

To establish a claim for defective construction or composition under the LPLA, plaintiff must establish that, "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or

---

[12] R. Doc. 1-2 at 4 ¶¶ 8, 9.

from otherwise identical products manufactured by the same manufacturer." La. Stat. Ann. § 9:2800.55. Here, plaintiff alleges that Merck's products are "unreasonably dangerous in their construction and/or composition," but her complaint is devoid of any factual allegations as to *how* the products are defectively constructed or composed. She makes no allegations regarding any possible deviations from Merck's specifications or performance standards, nor does plaintiff allege any deviations from identical products manufactured by Merck. She also does not allege specifically how the unidentified defect caused plaintiff's injuries. Federal courts applying the LPLA have made clear that defective construction or composition claims require more than conclusory allegations, and will not survive motions to dismiss without allegations of how the product is defective and how this defect caused the plaintiff's injuries. *See, e.g.*, *Aucoin v. Amneal Pharm., LLC*, No. 11-1275, 2012 WL 2990697, at *10 (E.D. La. July 20, 2012) (granting motion to dismiss plaintiff's defective construction or composition claim because plaintiff did not allege that product deviated from production standards or identical products); *Watson v. Bayer Healthcare Pharm., Inc.*, No. 13-212, 2013 WL 1558328, at *4 (E.D. La. Apr. 11, 2013) (granting motion to dismiss plaintiff's defective construction or composition claim because plaintiff did not allege how product deviated from production standards or

how the unknown defect caused her alleged injuries); *Kennedy v. Pfizer, Inc.*, No. 13-3132, 2014 WL 4093065, at *3 (W.D. La. Aug. 15, 2014) (same); *Becnel v. Mercedes-Benz USA, LLC*, No. 14-0003, 2014 WL 4450431, at *4 (E.D. La. Sept. 10, 2014) (same). Plaintiff's conclusory allegations therefore do not rise to the level of plausibility required by *Twombly* and *Iqbal*. Accordingly, her defective construction or composition claim must be dismissed.

B.   **Inadequate Warning**

For inadequate warning claims regarding pharmaceutical products, Louisiana applies the "learned intermediary doctrine." *Stahl*, 283 F.3d at 265. Under this doctrine, a drug manufacturer "discharges its duty to consumers by reasonably informing prescribing physicians of the dangers of harm from a drug." *Id.* (citing *Anderson v. McNeilab, Inc.*, 831 F.2d 92, 93 (5th Cir. 1987)). Accordingly, drug manufacturers have "no duty to warn the patient, but need only warn the patient's physician." *Willett v. Baxter Intern., Inc.*, 929 F.2d 1094, 1098 (5th Cir. 1991).

To prevail on an inadequate warning claim, plaintiff must demonstrate: "(1) that the defendant failed to warn the physician of a risk associated with the use of the product, not otherwise known to the physician, and (2) that the failure to warn the physician was both a cause in fact and the

8

proximate cause of plaintiff's injury." *Id.* This causation requirement means that the plaintiff must show that "a proper warning would have changed the decision of the treating physician, *i.e.* that but for the inadequate warning, the treating physician would not have used or prescribed the product." *Id.* at 1099.

Plaintiff fails to allege facts giving rise to an inadequate warning claim under the LPLA. She merely asserts that any warnings were "insufficient." She makes no mention of any specific risks that were not disclosed to her doctor, and she does not allege that a specific failure to warn caused her injuries. Nor does she allege that but for this insufficient warning, her doctor would not have used or prescribed the product. These deficiencies are fatal to plaintiff's inadequate warning claim, and the claim must be dismissed. *See Huffman v. Squibb*, No. 16-3714, 2016 WL 6024532, at *2 (E.D. La. Oct. 14, 2016) (dismissing inadequate warning claim under LPLA because plaintiff did not allege that adequate warning would have changed the decision of treating physician); *Hargrove v. Boston Sci. Corp.,* No. 13-3539, 2014 WL 4794763, at *11 (E.D. La. Sept. 24, 2014) (same); *Watson*, 2013 WL 1558328, at *5 (dismissing inadequate warning claim under LPLA because plaintiff did not allege "facts suggesting how allegedly inadequate warning caused her specific injury").

9

### C. Breach of Express Warranty

Under the LPLA, a manufacturer of a product that is unreasonably dangerous because it does not conform to an express warranty about the product is liable for damages caused by that non-conformity. La. Stat. Ann. § 9:2800.58. To establish a breach of express warranty claim, a plaintiff must show that (1) there was an express warranty made by the manufacturer about the product; (2) the express warranty induced the plaintiff to use the product; and (3) the plaintiff's damage was proximately caused because the express warranty was untrue. *Id.*; *see also Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 452 (5th Cir. 2002).

The LPLA defines "express warranty" as "a representation, statement of alleged fact or promise about a product . . . that represents, affirms or promises that the product . . . possesses specified characteristics or qualities or will meet a specified level of performance." La. Stat. Ann. § 9:2800.53(6). The statute adds that "general opinion[s]" or "general praise" of a product do not qualify as express warranties. *Id.*

Here, plaintiff's allegations are plainly insufficient to state a breach of express warranty claim. Plaintiff alleges that defendants made representations that were false, misleading, and inaccurate when they represented that their implants were safe and effective, and that the implants

were reversible, in that they could be removed whenever the patient desired.[13] Plaintiff fails to offer any specifics as to Merck's representations that could amount to a warranty. Nor does she allege that any express representation induced her to use Implanon or Nexplanon or that any such representation induced her doctor to prescribe either of them. Nor does she allege how the asserted representations were untrue. Indeed, plaintiff contradicts her allegation that the representation that the implants were replaceable was false in other parts of her complaint.[14] While plaintiff is not required to identify the exact language used in the warranty, she must specify the warranty in question and explain why the warranty was untrue.[15] *See Robertson v. AstraZeneca Pharm., LP*, No. 15-438, 2015 WL 5823326, at *5 (E.D. La. Oct. 6, 2015) (citations omitted). Plaintiff's failure to do so, along with her failure to allege that the warranty induced the use of the implants renders her breach of warranty claim insufficient under *Twombly* and *Iqbal*. *See Henderson v. Dasa*, No. 13-08, 2014 WL 1365968, at *3 (E.D. La. Apr. 7,

---

[13] R. Doc. 1-2 at 4 ¶ 9.

[14] *See id.* at 3 ¶ 3 ("Plaintiff . . . removed the Implanon implant and inserted Nexplanon as a replacement."); *id.* ¶ 4 ("Plaintiff had the Nexplanon removed as it expired and had Nexplanon reinserted.").

[15] To the extent that plaintiff relies on statements made in advertisements or in marketing materials, these statements generally "are not warranties because they are 'puffery,' 'general praise,' or 'general opinion.'" *Robertson*, 2015 WL 5823326, at *5 (quoting *Becnel*, 2014 WL 4450431, at *5; La. Stat. Ann. § 9:2800.53(6)).

11

2014) (dismissing plaintiff's express warranty claim because plaintiff's complaint "is devoid of any allegations regarding the content of the alleged warranty, much less an explanation of how that warranty was untrue"); *Robertson*, 2015 WL 5823326, at *5 (dismissing breach of express warranty claim under LPLA because plaintiff failed to "make more than a general reference to [an express warranty]"); *Flournoy v. Johnson & Johnson*, No. 15-5000, 2016 WL 6474142, at *3-4 (E.D. La. Nov. 2, 2016) (stating that plaintiffs' LPLA breach of express warranty claim fails to meet the requisite pleading standard because "it does not identify the contents of any warranty or how that warranty induced the Plaintiff to use the product"); *see also Doe v. AstraZeneca Pharmaceuticals, LP,* No. 15-438, 2015 WL 4661814, at *4 (E.D. La. Aug. 5, 2015) (rejecting breach of express warranty claim despite plaintiff's allegation that product was represented as safe and effective).

   D.   **Dismissal With Prejudice**

In sum, even when construed in the light most favorable to plaintiff, plaintiff's allegations are insufficient to raise a right to relief above the speculative level.[16]  *Twombly*, 550 U.S. at 555.  Rule 8 of the Federal Rules

---

[16]    Plaintiff's complaint does not allege anything related to the design of Implanon and Nexplanon.  Even if plaintiff's barebones complaint could be read to assert a design defect claim under the LPLA, the claim would fail because she fails to allege that safer alternative designs of the implants exist and she fails to allege that these unidentified alternative designs would

of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 504 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). Therefore, these claims are dismissed.

Merck's motion to dismiss asks the Court to dismiss plaintiff's complaint with prejudice. Plaintiff did not respond to Merck's motion, and therefore presents no argument against a dismissal with prejudice. Nor does plaintiff request leave to amend her complaint. *See* Fed. R. Civ. P. 15(a)(2). As such, the Court has no basis to determine how plaintiff would overcome the deficiencies in her complaint. Accordingly, plaintiff's complaint is dismissed with prejudice. *See Cinel v. Connick*, 15 F.3d 1338, 1346 (5th Cir. 1994) (affirming dismissal with prejudice when plaintiff did not ask for leave to amend and therefore failed to specify how he would amend complaint to overcome previous 12(b)(6) dismissal); *Alsenz v. Aurora Bank, FSB*, 641 F. App'x 359, 363 (5th Cir. 2016) (same).

---

have prevented her injuries. *See, e.g.*, *Kennedy*, 2014 WL 4093065, at *4 ("The failure to plead that an alternative design was available for the product is enough to doom the [claim], as the existence of an alternative design is a necessary element to a design defect claim under . . . the LPLA.") (citation omitted); *see also Aucoin*, 2012 WL 2990697, at *10.

## IV. CONCLUSION

For the foregoing reasons, Merck's motion is GRANTED. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __1st__ day of June, 2017.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE